The next case is Ralston v. Cannon 19-1146. Counsel for Appellant, please proceed. Thank you, Your Honor. May it please the Court, Counsel, my name is Katalin Donnelly and I represent the Appellant, Mr. Craig Ralston. In this circuit, Gallagher is the controlling authority on the elements of the First Amendment Free Exercise Claim. Like Gallagher, this is a 1983 case. Like Gallagher, this is a direct liability case. And like Gallagher, the claim that Mr. Ralston has brought is that Mr. Cannon violated his First Amendment right to freedom of religion. As such, based on the principles of stare decisis, this panel and all lower courts in this circuit are bound by the holding of Gallagher. The issue that has been brought to this Court's attention was based on a footnote in Ralston 1. This is the second time that Mr. Ralston has appeared before this Court. In Ralston 1, Mr. Cannon asserted qualified immunity and the Court was addressing that one issue in an interlocutory appeal. In that context, the published opinion of this Court had a footnote. Footnote number three is the reason that we are here today. There was an implication that in light of the Supreme Court decision in Iqbal, there might have been some changes as to the elements of First Amendment claims. So on remand, the Court addressed that issue at Mr. Cannon's request. Unfortunately, the Court did not follow stare decisis, and that is why we are here today. The famous footnote three. And one has to glean what we should glean from the famous footnote three. And this is my question for you. What I struggle with in your case is clearly established law. Number one, I don't see any indication that you argued that in your opening brief, and that is your burden to do, so please explain to me that. And more to the point, even if I overlooked the fact that at least I didn't glean any argument on that point, the substance of that issue is troubling to me, because how can we claim that at the time of this event, under these facts, it was clearly established for the chaplain that he did not have to purposely discriminate against Mr. Rawls in order to incur liability, when we ourselves in the famous footnote three suggested there was a tension between Gallagher and Iqbal. We said that. And even your amici brief says that Iqbal, which is trying to support you vigorously, says that Iqbal put into tension the question of Cianta. So given those two sources, drawing on those two sources, even if there was an argument, and correct me if there was an argument in your brief, but even if there was an argument, I'm struggling to see how the chaplain would have known the contours of the Cianta that governed his action at that time. I think, Your Honor, it is fortunate that we don't burden our government officials with understanding what the burdens of proof are in litigations, in the context of lawyers handling elements and mens rea element of each claim. It's the nature of liability, though, right? I mean, we engage in the legal fiction that in most instances, it may well be a fiction, that government officials are aware of the law that governs their action. And part of the law that governs your action is what do you have to do to be exposed to liability? And if, let's assume for the moment, that the law was Iqbal, then the chaplain would have said, well, you know, there's no way I'll incur liability vis-a-vis Mr. Raulston, because I didn't mean to purposely discriminate against him on grounds of religion. Well, let's assume the law is unclear as to whether that would be the rule, and that then if the law is unclear, he doesn't know. Well, Your Honor, actually, let me start with the whole clearly established argument and why it was not brought in the opening brief. As you see in the district court's opinion on remand, the judge adopts Judge Schaffer's analysis of clearly established. And therefore, there was no reason for us to appeal something that we had won on. There was no issue that the officials cannot put a burden on the religious practices of the prisoners. That is what a government official should have been unnoticed and should remain unnoticed of, that you cannot do something that is going to burden religious beliefs. Whether the scienter element is invidious discrimination in discrimination cases under the 14th Amendment, or with prisoners, that has to be considered. I'm assuming that the training is, Iqbal governs, Iqbal said you cannot intentionally, and Gallagher governs the First Amendment religious beliefs, and it says you cannot prevent people from getting the diet that their religion requires. These are two separate claims. The fact that Your Honor has implied that maybe the amicus brief would bound us, I would submit to this court that we are not bound by anybody else's. I'm not suggesting that it binds you, but what I would point to is footnote three, and footnote three is law of this case, and so you can put aside the amicus brief all you want. I'm just saying that that's supposedly a bunch of smart people who are advocating for you who make that acknowledgement. You're not bound by it, but footnote three suggests that there was a tension there that needed to be resolved, and the point is, under clearly established law, I'll make two points. One, at every stage of litigation, you have to show that you're entitled to win, so the question is not whether you're challenging clearly established law. The question is you had a burden to show that that was satisfied, and there's nothing in there that says, in light of what appears to be a generated confusion, even if you're right on what the underlying law is, a generated confusion that you have to show that the law would have been clearly established for the chaplain, that what he was doing violated the law, and all I'm asking you is focusing now on footnote three, suggesting there was a tension, suggesting that the magistrate judge had a whole, you know, proceeding on this. Why it would have been clear to the chaplain that what he was doing violated the law? Your Honor, this very argument is problematic because one, we know that footnote three was not based on any analysis of the claim in this case, so by saying that if someone out there, whether it's a government authority or a lawyer or a judge, raises some concern about a potential tension in the authority, then all the government officials are off the hook, and they can just go ahead and freely violate everybody's constitutional rights because somebody raised an argument that there might be a tension. That cannot be the state of the law. The state of the law is that it has to be undisputable that the government official is doing something unlawful, and the point is a panel of three judges, we hope smart people, point out that there's some tension in the law on this point, and then there is a hearing below in which a smart magistrate judge scratches his head with two smart lawyers and tries to figure out what the law is. That creates a situation where if the issue is, fiction or not, that the government actor has to look out there and say, well, boy, there's that clear, bright line, and that bright line says, I can't do this. Well, there's a question as to whether that line was clear is what I'm getting at. I understand your point, Your Honor. My answer is, that's why we have stare decisis. That's why unless the 10th Circuit speaks in full, Gallagher is the law of the circuit, and it doesn't matter who in what panel speaks and drops a footnote that raises some concern. That is why we have in this legal system stare decisis. It's a panel of this case, and so there's the law of the case. No, there's the law of the case doctrine, and so it's a panel of this case, which is not to say that the court in Walson 1 made a determination, but it is to say that it doesn't make it any other unpublished decision, does it? Your Honor, as I think this court has expressly said in the United States versus Springer, that is a 2017 case, under the principles of horizontal stare decisis, we are bound by published opinions of prior panels, absent unbunked reconsideration or a superseding contrary decision by the Supreme Court. There is no contrary decision, and we have explained that Iqbal was, and as of today is, a 14th Amendment case on discrimination, and that did not create a blanket element of invidious discrimination in all constitutional court cases. Ms. Donnelly, may I attest that just a bit? So, and I don't think anybody will disagree with you that a published opinion by a panel cannot be overturned as an intervening Supreme Court decision or unbunked consideration. I don't know that anybody's challenging you on that, but after Gallagher, I don't know if you recall the Clark versus Zwally case, and it was unpublished, but it was three years post-Gallagher where a panel said that, as I recall, that a chaplain, that the panel held that there was no viable First Amendment interference with religious freedom claim when a chaplain threw out a Bible as well as other non-religious materials, and importantly, Clark versus Zwally held because there was no evidence of discrimination, an intent to discriminate, citing Iqbal. Well, if a panel, unpublished or not, post-Gallagher, subscribed to the view that there has to be a volition to discriminate for any interference claim that was not predicated on, it was just on that individual's inability to express his religious beliefs because based on his Bible, why shouldn't we say that the violation here alleged was not clearly established? Because after all, the official, the chaplain could have simply relied on Clark versus Zwally. And chaplain could not have for the very principle of stare decisis. There's no question, unless there's a published opinion, chaplain and everybody else in chaplain's position have to follow Gallagher. Fortunately, we have the two judges on Zwally panel on this panel as well. I have read Zwally 15 times. There is zero analysis. There is no mention of any tension between Iqbal and Gallagher. Let me also probe this. In Gallagher, the court was citing another circuit opinion for this idea that there has to be conscious awareness for intentional discrimination, but the court was simply saying that negligence in itself was not enough. And perhaps that's why Clark versus Zwally was able to say what it did post-Gallagher because maybe they were saying that simply citing another circuit opinion doesn't necessarily reflect that the court was subscribing everything that the other circuit had said. No, your honor, that's not the only issue. Gallagher relied on previous precedent from the 10th circuit, one after another, confirming the elements. But Gallagher didn't confront the issue that is being raised. I mean, Gallagher, I just looked, did cite Iqbal, but cited Iqbal for just a sort of basic proposition. So, until a court is faced with the issue, and a smart lawyer like you, Ms. Donnelly, I'm not sure that in another case, one wouldn't say, oh, here's Iqbal, and I'm going to make the argument that the standard has changed now. Now, maybe a court will say, no, the standard hasn't changed. But the argument seems to me would be open to make the argument that granted, and I'll accept, I know that Gallagher came after Iqbal. That's not my point. My point is, one could argue until otherwise told that Iqbal had the effect of shifting things. And I'm not sure I understand why one couldn't do that, despite your stereo-decisive point. MS. DONNELLY Your Honor, I noticed that I only have 30 seconds, and I have had very little time to argue my case. May I have additional time? MR. MCMASTER You're arguing your case right now, Ms. Donnelly. I mean, you're dealing with issues that are important to you. MS. DONNELLY Your Honor, the issue is that, as I have mentioned before, that the elements of the claims are different. Ms. Wally was not burdening my religious beliefs and practices case. It was, I was discriminated against because I am of a certain religion. So was Iqbal. This is not the case. For a decade after Iqbal, not a single case has added the element of invidious discrimination. They have all said that was not a blanket check. That was not a blank check. That was not a blanket to add an element of invidious discrimination. We have always gone back to the elements of the underlying constitutional issue, whether it is a 1983 case or whether it is a supervisory claim after Iqbal. Of course, the only tension is as to what Iqbal did as a supervisory liability with other constitutional claims. But there has never been a question that when you're talking about burdening somebody's religious beliefs inside a prison, there has never been an additional claim, additional element of discrimination. Ms. Wally did not address that for a good reason, because the same act of taking somebody's belongings because of their religion can be the basis of two separate claims. Finish the thought and end, please. Sorry? Finish the thought and end, please. Thank you, Your Honor. So they can be separate, the basis of two separate claims. One is that you took away my belongings because I'm Jewish, because I'm Catholic, because I'm Muslim, because I'm Hindu, or that in addition to that, you also burdened my religious practice because you prevented me from praying to my God, whichever church that God is in. So the problem that you're having is that Zawali was addressing that discrimination, and Zawali was affirming the dismissal and giving a second strike to a pro se prisoner. That was a completely different context, no analysis, completely dicta, as opposed to a claim. All right. Thank you so much, and I appreciate your patience. Thank you. Thank you. Counsel? Good morning. May it please the court. I'm David Cooperstein, and I'm here on behalf of Chaplain Cannon. When Chaplain Cannon denied the kosher diet request, he had no reasonable way of knowing that that decision could arise to a First Amendment violation. In order to overcome qualified immunity, existing precedent must have placed the question beyond debate. Yet in Rouston 1, a panel of this court stated that there is reason to doubt whether conscious interference amounts to a First Amendment claim. Chaplain Cannon is entitled to the benefit of that doubt. The law was unclear in 2013, and it remains unclear today in two crucial respects. First, we have the conflict amongst appellate precedent dealing with these cases, and also we have a lack of any specific guidance, any specific facts analogous to those here where the First Amendment was found to have been violated. Attorney, first. I'm sorry. Can I ask you a question? Now, we are reviewing a ruling granting a motion to reconsider, and on the prong two of qualified immunity, in your motion or in the motion to reconsider, there was no discussion of prong two of qualified immunity. Is that a problem in us reaching prong two? No, Your Honor, it is not. In our original motion for summary judgment, we did have an entire section on that. I didn't rehash the entire motion. I know that's true, but we're not reviewing actually the summary judgment ruling. We're reviewing the award of the motion to reconsider. And I would say absolutely not again, Your Honor. Even so, I would think the original motion would be folded into that. But regardless, as the appellee here, I have the benefit of the that could justify that. Additionally, just raising qualified immunity, as Cox v. Glantz comes to mind, a prior president of the Tenth Circuit, having raised qualified immunity, that automatically triggers the two-part burden. So it doesn't even, even if I were the appellant, I wouldn't necessarily need to get deeply into the second prong to preserve it by appeal. So the issue is preserved and right for review by this court. So since 2009, when Gallagher was decided, several panels of this court have declined to apply the conscious interference standard. Most notably, Pauls v. Thomas, a reported case from 2013 involving viewpoint discrimination. Footnote eight of that case states that under EECOL, where liability is to be imposed upon an individual defendant for discrimination and violation of the First Amendment, a plaintiff must prove a discriminatory purpose supported by evidence of the defendant's subjective motivations. However, I'm a little familiar with Pauls, and I'm scratching my head why that helps you. I mean, Pauls is nothing like this case. And inherent in Pauls was a discrimination claim. At least as played out here, the argument certainly of Ms. Donnelly is there is not a discrimination claim on the table. The equal protection claim was out of the case. And so why is a case involving viewpoint discrimination, inherent in it, discrimination, equivalent to denying somebody a kosher meal? The short answer is due to subsequent decisions of this court citing to that footnote. But I would be remiss if I didn't note that Mr. Ralston's claim as styled by him in the complaint in discovery when he had only a First Amendment claim pending and on appeal after summary judgment has always been one of discrimination. Judge Schaefer suggested there were two claims. And he suggested that there was a claim of equal protection and that there was a claim of free exercise. And the equal protection claim was dismissed. And I think at this juncture, the issue is that there was only the claim for the denier of a kosher meal based upon burden on his First Amendment rights. Where do you get that? So respectfully, Your Honor, the equal protection claim was dismissed at the outset of the case. Summary judgment dealt only with the First Amendment claim, which was a discrimination claim. You can have a discrimination First Amendment claim or a discrimination equal protection claim. And Iqbal dealt with that exact situation. I understand that. But the point was that and I understand that it happened at motion to dismiss phase. The point was once that motion to dismiss took place as it relates to the equal protection claim, as I understood it, the contours of the case as framed for summary judgment did not involve discrimination, but involved a burdening of a sincerely held religious belief. What do you point to in your briefing that would suggest that you view this as being a discrimination claim as opposed to a burdening of religious belief? Well, Your Honor, I absolutely misapprehended the nature of the law based on my misreading of Gallagher. The fact and perhaps reviewing this court's subsequent precedent to Paul's will shed light on why I was incorrect. And perhaps I'll answer your question by turning to the next case that cited that footnoted of Paul's, which was Williams v. Wilkinson, a 2016 unreported Tenth Circuit case involving a kosher diet claim, very much like the one here, it differed from the one here, and that it was asserted both against the governmental entity and against the individual prison director. The court determined that the claim against the governmental entity could proceed under the traditional free exercise standard. The plaintiff had plausibly alleged that the regulation burdened a sincerely held belief, and the second part of the analysis wasn't right for adjudication. However, citing to footnote eight of Paul's, the court granted qualified immunity as to the prison director under the invidious discrimination standard. In other words, what about the chaplain in Williams? I'm sorry, can you could you say that again? In Williams? You cut out again. I'm very, very sorry. If I could ask for a third one. What about the claim against the chaplain in Williams? Your honor, I believe that the individual liability claim was subject to the intentional discrimination standard and qualified immunity was granted. Well, okay. My reading of it was that the claim was allowed that the Williams panel reversed the dismissal of the claim against both the warden and the chaplain, and there wasn't any discussion about the chaplain's motivation. Am I wrong about that? Your honor, my reading of it was that the absence of any plausible allegation of intentional discrimination precluded the claims against the individual defendants, but that the entity defendants didn't have, just as Paul's delineated, didn't have to, didn't have that requisite show. And I think Harvey's Wally, your honor, the case you referenced was actually a 2019 unreported decision. It confirms, at least by that panel, my understanding of the controlling aspect as an individual versus an entity claim. Again, that was a disposal of religious materials case. As I read it, there's no discussion of any similarly in Williams v. Wilkinson. There was no discussion by the panel that the claim was one of self-styled discrimination. Well, in Carr, the point was the allegation that there was discrimination in taking his Bible. I mean, the point, I mean, if I understood you, you're acknowledging there could be two species of religious claim, free exercise claim, or religious burdening of religion. You could have a claim that is predicated on burdening sincerely held religious beliefs, and a claim that's predicated on actually invidious discrimination because of your religion. You accept that premise, right? Your honor, I cannot, given the state of precedent. You don't accept that premise? I can't, I don't and I can't. The precedent that I'm relying on here seems to indicate to me that the distinction, there is only one species of first amendment for exercise claim, except that what differs is the defendants and the differing legal standards. And that's what I'm seeing from Paul's, Williams, and Carr. That said, the state of the law is unclear and the circuits are all over the map and how they evaluate these claims. In the 11th circuit, there was a recent 2020 case where the court applied an objective reasonableness standard. That one being Freeman v. Sample, 814 federal appendix 455. There is no consistency whatsoever in how these claims are treated. So when I say my own personal belief, I draw it from that triumvirate of cases appears to be the distinction between an entity versus an individual. Well, counsel, before you move on, can I ask you, are you urging us to decide this case on clearly established or do you, are you urging us to resolve the Iqbal-Gallagher tension? Let's just call it. Your honor, I believe the case is most clearly decided on the clearly established prong. That's, to me, an obvious decision. If the court is, wants to exercise its discretion to reach the first prong, of course, some clarity in the law would help guide. And I think that the distinction I've urged here today, that there's a different claim as to, or a different standard as to entities versus individuals should control that would ensure that the prison entities have rules that reasonably relate to they would burden a sincerely held religious belief, but also insulate prison officials from making these types of very close judgment calls. Courts have repeatedly instructed the Supreme Court and this court have instructed that, and this is from Cutter v. Wilkinson, Supreme Court case from 2005, prison officials may appropriately question whether a prisoner's religiosity asserted as the basis for requested accommodation is authentic. And this court has similar precedent. So prison officials have been told to, I'm sorry, go ahead, Judge. No, go ahead. I didn't mean to cut you off. So, so the courts have instructed prison officials to make this difficult inquiry, but not provided any guidance as to what that should look like or where that inquiry might run afoul of the First Amendment. I believe to give the breathing room for mistaken judgment, the discrimination standard does that. It balances the interests in that they have to make these tough calls, but also doesn't hold them strictly liable if they happen to get it wrong. So the answer though, just to my question, do you want us to just say it's not clearly established here? You just made your argument for, for deciding prong one. So what are you asking us to do? I would request that the court resolve on the second prong and find that the law is not clearly established. I apologize for the roundabout answer, Your Honor. No, no, that's okay. I just, I just wanted to clarify. Thank you. So in light of, um, could I follow up on prong one, since we're going back to that, uh, now that you've stated your preference, I just want to get clear. I I'm, I'm a little confused why you think that this is such a tough call and therefore that you have to extrapolate to your institution visa versus individual standard. I mean, in your brief, he used language like dubious religious accommodate approving a dubious religious accommodation, very low thresh evidentiary threshold for Gallagher. Why wouldn't it under Gallagher and under our prior precedent, let's assume we're under the Gallagher rubric. Why wouldn't it have been an obvious decision to the I, why is that not obvious that it is what the individual thinks their dietary preferences are based upon their religion. As long as they're sincerely held, it seems to me the law is pretty clear on that at that time. Two, two points are on our first, if you read the grievance, you'll see the primary rationale that a chaplain can incited to where the inconsistent statements from Mr. Ralston himself on his booking questionnaire, he said he didn't need a religious diet. Then after being in prison for three days, he submitted the grievance chaplain cannon saw that saw the inconsistency and that race and red flags. So it wasn't relying solely on the messianic Jewish consultant. However, deviation from a tenant, the orthodox tenants of a belief isn't something that a prison official has to ignore in making this decision. It can't be the sole basis. There's a great case on this called Vinning L. V. Evans, 657 F third 591 out of the seventh circuit that's been cited favorably by the third and sixth circuits. And quoting from that, although sincerity rather than orthodoxy is the touchstone, a prison still is entitled to give some consideration to an organization's tenants for the more a given person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held. So I don't, wouldn't agree with your honor that a chaplain cannon was required to completely set aside the tenants of the faith. Those are of the very difficult decision he had to make in deciding whether this request was grounded and sincerely helpful. If he relied on the messianic Jewish consultant alone, what would be your view? My, I would still say that cannot rise to the level of discrimination. However, what I was asking you under the Gallagher rubric, would that be enough? Uh, uh, possibly. Yes, sir. I'm going to go with yes on that. It seems like it would be. It's clear that you cannot just decline somebody's religious request because it differs from the orthodoxy of the, of the religion. Um, so, um, started to size. This is not an issue in this case for two reasons. First, where as to the clearly established law analysis, this court has stated time and time again, that in deciding that the law is not clearly established, unpublished decisions are equally persuasive as published. Grissom v. Roberts is one fairly recent time this court has announced that. Additionally, Pauls v. Thomas is a reported case that could, and Iqbal itself could reasonably read to, uh, require intentional discrimination. Um, um, these Pauls v. Thomas, Williams and Carr are all at odds with the cases applying conscious interference. I think that's clear, your honor, at least hinting at that as being the standard. I can see that I'm out of time. So in closing, I would like to state that at the time Chaplain Cannon denied their kosher diet requests, uh, he was reacting to contradictory statements made by Mr. Ralston. The law is not at all clear how the first amendment free exercise standard applies to these facts and officials must be given breathing room to make difficult decisions such as these. That's the essence of qualified immunity. We respectfully request that the court affirm the finding of qualified immunity. Thank you very much. Case is submitted. Thank you, counsel.